Next case before us today is United States v. Nkome, 18-3261. Good morning. May it please the court. Kayla Gassman for the appellant Gladys Nkome. The issue in this case is whether the district court erred when it denied Ms. Nkome's request for a minor role reduction. This court's case law and the minor role guideline are clear that the crux of the minor role determination is relative culpability. But missing from the district court's discussion of the minor role request is a comparison of Ms. Nkome's culpability and role to the culpability of the other participants in the offense. Could I just ask on that point, where in the record did you alert the district court that it failed to make that comparison with the other participants? So we alerted the district court to its obligation to make that comparison every time we requested the minor role reduction. We specifically would point the court first to Federal Rule of Criminal Procedure 51, which says that a party can preserve an objection either when a ruling is sought or when it is made. And when we sought the ruling, first in the objections to the PSR, which is at volume 3, page 169, I believe specifically paragraph 225 of the objections, we alerted the court to the argument that the minor role evaluation, quote, starts with a comparison of the other defendant and the other participants in the conspiracy. Citing the Tenth Circuit case of Marino, which was about that kind of internal comparison. And then we actually also go further to say that failure to perform that comparison can be reversible error. Citing a Fifth Circuit case with a holding that's essentially identical to this court's decision in URIC. So at every point when we requested the reduction, we alerted the court to its obligation to make this comparison. Can I probe that a little bit? Now, in the U.S. versus URIC case, there was no issue, either briefed or in the decision, about whether or not each of the criteria in the commentary to 3B1.2 need to be applied to Wendy URIC with her co-defendant, Darryl URIC. And so there the issue that was briefed and that was decided was that a mitigating role adjustment could not be appropriately declined in that case because the judge specifically said that she had a necessary and indispensable role in the conspiracy. A rationale that this district judge specifically disavowed. There was no issue in that case about whether those criteria in the commentary to 3B1.2 need to be applied. Each one of those criteria with regard to a co-defendant. So I have a couple of responses to that. The first is, although we have briefed it because when there are many factors like this, I think there has to be a digestible way to discuss the analysis and discuss the factors. So we have discussed the factors as they apply to Ms. Comey and to the co-participants. I don't think our argument is necessarily that the district court is obligated to actually go through and within each factor compare the defendant to the co-participants. And this goes to my second response about Yerrick, which is while the finding, the dispositive finding that the defendant's role in that case was essential was the specific error in that case. I think Yerrick's holding is much broader than that, which it says multiple times that the court is obligated, the district court is obligated to do a relative culpability analysis. It must do a comparative analysis. And here, although the district court didn't make the same exact error as the court in Yerrick, it still failed to do a comparative analysis between this defendant and her co-participants. That is still error under the guideline and under Yerrick. I want to follow up on Judge Mathison's preservation point, though. It seems to me that what you're alleging fundamentally is an error of articulation. The court did not do an internal comparison. And despite the fact that you alerted the court to what the law was and its obligation to do an internal comparison, since it's ultimately a failure of articulation, why weren't you obliged to tell the court that it didn't do what it was obliged to do? I think Rule 51 answers that question as well. Rule 51 specifically says that a party is not required to take an exception, again, to a ruling of the court. Once we put the court on notice of our position that it had an obligation to do this comparative analysis, An exception implies error. It wasn't clear there was any error until the court opened its mouth. That's different than saying that in a situation here, this is what the law is. You file a sentencing memorandum. You tell the court what the law is. Well, the court goes out there and the court makes a mistake. Why aren't you obliged to tell the court, well, you know, you didn't do what the law was at that point? Because the error didn't occur until the court opened its mouth. But we had already very extensively and very specifically alerted the court to the correct standard. That's not the question. The question is you're going to alert the court to the standard, but if the rule of preservation, particularly in the sentencing context, where there are articulation errors, if that's going to have any meaning, it's not enough to alert the court. You have to alert the court that it failed to honor its obligation, don't you? I think, to me, that sounds like requiring us to take an exception to the ruling of the court. We made the argument to the court. There's no reason to believe the court. How could you make an exception to something when the court didn't fail to do it until it opened its mouth? First of all, I would also point out, since the government didn't take any issue with the standard review, that I didn't brief this. That doesn't stop the same court. I understand that, but I do think this court does have cases, which I did not cite in my brief since the government did not brief this, but in particular, I'm thinking of the Lopez Avila case, where I believe there was a very similar kind of error, and this court said there's no reason to require the defendant to take an additional exception. Once the argument is set forth to the district court and the district court considers it and makes a ruling, there's no purpose to require an additional exception. It depends on what the kind of error is. Let me give you an example. Sentencing memorandum. The question is whether there's sufficient evidence to support this particular enhancement. You brief it, you explain to the court there wasn't sufficient evidence, shouldn't happen, goes in, and the court says, boom, I'm going to uphold the enhancement. Well, you've said all you need to say. You've told the court there wasn't sufficient evidence. The error, and the court, and no additional evidence came in, so boom, there's an error. But this is an error of articulation. It's saying the court didn't utter the words that would have allowed this to matter, right? I don't see it that way. Because I think what's different between this case and Yurik is that the way I understand it in Yurik is that the full standard was not laid out to the district court, that it's obligation to conduct this kind of comparative analysis or the factors were not provided to the district court. Here, we did that. Multiple points in the PSR objections, and then when we started our argument at the sentencing hearing, we jumped off from that PSR objection, again, from the Tenth Circuit Marino case about this comparison, and then our entire argument was comparing Ms. Comey's role and culpability to that of the co-participants. So we alerted the district court multiple times to its obligation to conduct this kind of analysis, and I think in a fast-moving sentencing hearing with multiple issues going on. Didn't the court specifically ask, is there anything else? And you said procedural and substantive reasonableness. I preserve those objections. Yes. Which doesn't tell you anything, does it? Well, you know, I've not necessarily relied on those here to say that that's how it was preserved, but we did object to the sentence because we had made objections that the court overruled. So to not, you know, waive any of those objections, we objected to the reasonableness of the sentence as well. But here, we had alerted the district court previously very specifically to the arguments. So to the extent that additional objection was necessary, I think objecting to the procedural reasonableness is something because previously we had given a lot of content to that objection by setting forth this comparative analysis and the district court's obligation to conduct it. What's your best case that says that the mode of analysis that the district court actually undertook here was wrong? I think URIC. URIC says very clearly that— URIC dealt with a whole different issue. There was a whole different sentencing error in URIC. But the holding of URIC is that a district court to conduct the minor role analysis must do a comparative analysis. And why did the court not conduct a comparative analysis when it situated this defendant within the scope of a broader conspiracy? And if that is not appropriate, if that is error, what I'm asking you is where is the case that says that is not exactly what the court did do, that it did not do an internal comparison? I think our argument is not necessarily specifically that the district court has some sort of checklist that it has to go down to make this comparison. I think the court just has to say enough to satisfy this court that it did conduct this kind of comparison. And on this record, I think there just is not enough to satisfy this court that the district court did so. Well, you're going to have to tell us why. I mean, if we're going to reverse, then the question is what is it the court, I think, would purport to have believed that it had done that. I mean, if it situated this defendant, as I understood what the court did, reading the record, the court said, look, when you get down to it, they're the top international guys, and then there's everybody else. And there is no really significant difference in culpability between everybody else. Some people had higher skill set. They applied more specialized skills. But essentially, I can't say anybody was more culpable than anybody else. Well, by doing that, what I'm saying is if that is not sufficient for an internal comparison, then where is the case that says that is not sufficient? So that statement by the district court followed a much longer discussion where all the court discussed was the factors as applied to Ms. Comey's role without any comparison to the co-participants. So it then did make this conclusory at the end statement that you're referencing. But we've cited, I think, the Hill case from the Seventh Circuit is helpful in that. It says even when there is a conclusion like that, we still need to be satisfied that that conclusion was guided by the appropriate factors. So here, I would argue the court would need to see something in the discussion of the definition of Ms. Comey's role that compares that role and that culpability to the co-participants. But I want to make sure that I understand specifically where you're drawing the line. As I understand it, you're saying that the district judge, when he or she applies those criteria in the commentary, in each individual factor doesn't necessarily need to compare Ms. Comey to other individuals in this alleged conspiracy. But at some point, for example, let's say hypothetically the judge does with one of the factors and the other one simply discusses Ms. Comey in isolation. Would that be OK? I want to answer this question, and I want to try to reserve some time. I think so. I mean, I think it's going to depend on the facts of each case. Here, I think what's particularly helpful maybe is to look at the court's discussion of factor four, which the court said was the worst factor for us. Because that's the nature of the defendant's participation, including their discretion. And there, the court only talked about Ms. Comey. Just said the length of time you participated in this, the fact that you went to pick up money on your own, that's significant participation. But if you look at the participation of the co-participants we know about, that is much more minor participation. The co-defendant, Mr. Karakuy, had participated since 2012, was responsible for $800,000 worth of loss, had dozens of contacts in Cameroon, which Ms. Comey does not have. So I think had the court been conducting any kind of internal comparison, there needed to be some discussion that would indicate to this court that the court was actually doing that. Well, as to your answer to Judge Bacharach, it seems to me is problematic for you because in the first factor, the court did do a comparison between Ms. Comey and her co-defendant. I don't think it did. What the court did there was said, I'm going to use the fact that you're connected with this co-defendant to infer that you understood the scope of this conspiracy. Exactly. And what I'm asking is, you're saying that that is insufficient to qualify as an internal comparison. Situating people, judging them relative to other participants is not sufficient to qualify as an internal comparison. And if it is not, I'm saying, why not? And give me a case that says that's not good enough. See, I don't think that is an internal comparison. I think that was just a finding about Ms. Comey. I understand what you're saying, but the court is doing, number one, and it's talking about Ms. Comey relative to other people. And why isn't that comparing her to other people in the conspiracy? I think the court would have to then look at Mr. Caracui's understanding of the scope and structure of the event. Well, counsel, here's where I'm having a problem with the argument. You separated your issues into whether the correct legal standard was used and then, secondly, whether the judge made a correct determination in applying that standard. If the court is drawing the comparison between your client and the co-defendant, it's still a comparison. You may not like the comparison. You may disagree with what the court was doing. But doesn't that go to your second issue? Not whether there's a comparison being done. I don't think so. And the reason is because even though the court referenced the co-defendant to define Ms. Comey's role, it did not then discuss the co-defendant's own culpability and own role. And the fact that he was the point of contact between the organizers in Cameroon and Ms. Comey, that he's the one who gave all the instructions to Ms. Comey. By the way, your time's running out, but you really haven't said much about your second issue. Do you want to say anything about that? I think we're primarily resting on the first issue today because I do think the appropriate remedy is a remand to the district court for the district court to apply the correct standard, which is why I'm focusing on that issue. Well, you're not conceding the second issue. I'm not conceding the second issue. I think the court could make the finding if the court wanted to, but I do think the strongest remedy. Even under a clear error standard of review? I think what we're arguing is primarily the district court made a legal mistake, which is a terrible review. Well, I'm asking, on your second issue, have you satisfied the clearly erroneous standard to succeed on this appeal? I think we have for the reasons that are in the brief. All right. I understand. Yeah, I am out of time. I appreciate it. I'll give you one minute on rebuttal. Thank you. I appreciate that. May it please the Court. Jared Magg representing the United States. Judge Holmes, I want to, I think, addressing your first issue and the same issue that was raised by Judge Matheson, that there was not an affirmative remark by counsel for the defendant below that would have alerted the district judge that this comparative analysis was not used during the sentencing proceedings. So to the degree, I think there's some merit to the issue of, while they may have raised it in the PSR objections, when the judge ultimately made his decision, they simply said, well, we're going to preserve this for appeal on procedural and substantive grounds, but never said, but we would like you to do some comparative analysis because we think you failed in that regard. That was never said. At no point, they just simply went, seemingly accepted the judge's decision without alerting Judge Crabtree to this comparative analysis. Well, I don't know about just simply accepting. They did say at the end that they objected on procedural and substantive reasonableness grounds. So they aren't saying we accept your analysis and conclusions here. If I'm understanding the argument, there was repetitive attempts to at least make the argument about comparing the client to other participants. So is there at least an implicit objection to the standard applied here by the district court? I think it's a close question. But I think that there was some merit to the issue of whether or not that they gave Judge Crabtree an opportunity to clarify what he was doing. And I think that goes to the larger issue of whether or not there is some, and I think to some degree this is a cautionary note, if the court is requiring a district judge to use certain language to the degree saying, while I've done the 3B 1.25 factor analysis, I'm now going to the comparative analysis. They seem to suggest that the comparative analysis must be done in a vacuum, as if the district judge must make some sort of advance notice to the parties that I'm doing this analysis under 3B 1.2. But now I'm going to comparative analysis and I need to do that. They seem to suggest that that is a requirement. And I think there's some cautionary note there. Just to be clear on the preservation point, you didn't alert us to the preservation forfeiture problem on appeal. No, we did not. We did not. Should we apply the waiver forfeiture principle? I mean, it is a discretionary principle. It is. Should we or should we not entertain the merits of the felon's argument in light of the fact that you didn't challenge preservation? Right. You can. You absolutely can under the circumstances. We certainly didn't object to the issue of them taking a further step on the issue of objecting before Judge Crabtree beyond the procedural and substantive analysis. We didn't say that because, quite frankly, well, I wasn't the prosecutor below. But I think, at least from what we could tell, the prosecutor's opinion was that the 3B 1.2 factors were met. But this gets, I think, to the larger meritorious question, which is the issue of Judge Crabtree's analysis is largely informed by his comparison of Misincome to all the other members in the conspiracy. While he did not . . . Could I just ask, there was the co-defendant in this case. And I understand that this is a large scheme. There are multiple participants. But there was a co-defendant here. And isn't the weakness in the analysis the lack of comparison with the co-defendant? In other words, wasn't Ms. Comey substantially less culpable than the co-defendant, given what she did, given what he did? The way I read Judge Crabtree's analysis was, while she may have played the quote-unquote money mule aspect of the conspiracy, she certainly was below him in the chain of where each individual person stood. He appeared to be somewhat of the middle man, where the individuals in Cameroon and the people who were sort of leading the conspiracy in the sense of establishing these criminal fraudulent acts, he would then set people afoot to do the actual grabbing of the money and using of the false identifications. Where she fell with respect to whether or not that made her less culpable than the average participant, Judge Crabtree, I think, did exactly what he was supposed to do in going through the factors and determining whether or not her role was equally or less culpable than the average participant. And he said no, largely because her role was integral in getting the money. Her role was integral in how many times she went to get the money. And her relation, you know, he does talk about her relationship with the co-defendant and the fact that, which I think went to the broader issue of his explanation of her understanding of the actual complexity of the conspiracy and where her role was in the conspiracy. But being integral as a matter of law does not preclude you from getting this enhancement, right? No, not at all. And the case was complete with that. And what I understood, and check me on this, what I understood Judge Crabtree to say, and what we would need to decide is whether this is a plausible reading of the record. What I understood him to say was essentially that even though these people had different roles, some with greater skill sets than others, that I cannot determine that she was less culpable than the average participant. In other words, there's this tier and then there's everybody else. And maybe that isn't the best reading of the record. Maybe that's not the one we would reach. But the question would be whether that would be clearly erroneous to do that, right? Right. And our position clearly is that he did a very good job of lining out exactly which of those five factors she had really satisfied by her culpability and those that she had not. And of course, it really came down as he reflected as a three to two, but one of those was a very close call. Now, and he made it very clear, and no court would necessarily hold that it's a mathematical equation, that if you're three to two, you automatically do not get the minor role adjustment. But he looked at this, and then when you look at pages 126 and 127, where he begins to wrap up what his position is on this, he says that she, the defendant, whether or not she was substantially less culpable than the average participant, he could not find that based upon her role in the conspiracy. Now, whether or not he was comparing her against just the money mules, whether or not he was comparing her against the co-defendant, but it's very clear he was comparing her against other individuals in the conspiracy based upon where she fell in the hierarchy. Let me ask you, and I appreciate your remark, and this dovetails into Judge Matheson's question. In 3B1.2, is Judge Crabtree supposed to compare Ms. Dekomi's culpability to the average participant in this wide conspiracy or to this particular co-defendant? And I ask that because I find, rightly or wrongly, some ambivalence about which is the proper inquiry in our case law, including in the Wendy Uric case, which was the error was in the failure to consider Wendy Uric's culpability with regard to Daryl Uric's, one individual, as opposed to the hypothetical, quote, average participant. Which is it? Yeah, and so, Judge Bacharach, I think, to directly answer your question, I think it's to the larger conspiracy. And I think you can draw a little bit on some of the issues that we see in the more standard drug mule cases and where they fell in the conspiracy, what they knew in the conspiracy. I think that's a good analogy to use here because of what the role they played, clearly was on the lower end, but its integral nature of it really is why Judge Crabtree found that she was, you know, not less culpable than the average defendant because she played such a significant role in how this conspiracy was able to move because without her, the money doesn't move back up the chain. Now, so to the issue of whether or not she is compared to just the co-defendant, the answer is no. I think she's compared largely to the rest of the individuals in the conspiracy, but where her role is directly related to those individuals. Now, if we disagree with that, should we reverse based on the idea that Judge Crabtree may have done exactly what you said, but if we hypothetically say, no, you actually are supposed to or included within, embedded within that comparison is to compare Mr. Comey's participation to that particular co-defendant, should we say that there was an abuse of discretion and failing to consider a culpability with regard to this one fellow? No, I don't think that he did. I think he seemed to be fairly clear on where her association was with the co-defendant because of their relationship and because they did have a child in common, that she wasn't disassociated with the co-defendant in such a way that she didn't understand the nature of the conspiracy. Certainly, it was well understood that he directed her actions, was able to procure the false identifications and give them to her and then direct her to use those. I think that was well known, so I guess I would put it in the reverse. What would Judge Crabtree do if it was sent back? What else could he say in our position is nothing. There really isn't anything that he hasn't already said up to this point that would reflect what her association was with the co-defendant in these circumstances. Now, I don't know if it gets to the broader question about whether or not he would have to compare her against other money mules. I'm not sure that was the court's question, but I want to be responsive if that was. No, you've answered it. Okay, because our position, I think, at the end of the day is that he is compared against the larger conspiracy. But I think, again, the bigger issue I think that this court has to address, and I think this gets sort of to the URIC issue that Your Honor wrote in that matter, is whether or not there has to be some sort of demonstrative language on the part of the district judge to say, I am now divorcing myself from the 3B1.2 factors and getting to the comparative and analysis factors. If that's true, I think that could be problematic because, as this court is aware, conspiracy cases are case by case. They're very different. If this court were to somehow require a district judge to have some descriptive language that differentiates itself between 3B1.2 and comparative analysis, I think the court would find itself in a much more difficult position on how to analyze these cases because I think, at least our position is, is that Judge Crabtree's language here, broadly analyzing the conspiracy, informed his decision on the issue of comparative analysis. Again, I would get back to the issue. If this court were to send it back, what else would Judge Crabtree have to say that he hasn't already said? Counsel, how are district courts supposed to determine who are the average participants? Well, through a case-by-case analysis, and I think in this case... Well, what's the, I mean, what does average participant mean? Are there any standards that... Well, 3B1.2 gives at least some basic description of what that role is and gives examples of where you should or should not apply those circumstances. So the average participant, and I think to get to the heart of your question, the average participant in this case may be problematic in the sense that the court put three very distinct hierarchies of the people in Cameroon, the middlemen generally in Maryland, and then the money mules that were spread out. Well, and the document forgers. Right, and we sort of use them as the middlemen. They had a distinct and defined role. Oh, that's the middle? Okay. And so to the degree that we view them... Are they average participants in this case? No, because I don't think anybody is necessarily considered... Well, at least Judge Crabtree didn't seem to think that one person had a more definitive role than another because everybody played such an integral part in their role in the conspiracy that the conspiracy would largely fall apart if they didn't complete the roles that they were assigned. But you keep talking about integral. I thought the guidelines specifically rejected the notion that that becomes the driving force of how integral your role is. I mean, you can still get this adjustment even if you were integral to the conspiracy, right? That's true. I'm sorry. And I thought Judge Crabtree actually did say that middle tier were average participants and essentially said at the end that she's not any less culpable than they are. I agree. I'm sorry. In just describing how he looked at the hierarchy, you are correct. His ultimate analysis was that everybody played a similar role in the sense of average participation in what they did, that she was no less culpable than, say, tier two under the circumstances. And I think that went to the broader question about whether or not the conspiracy would fall apart if one of those individuals either refused to do their role, exited from the conspiracy itself, and he seemed to suggest, yeah, it would fall apart under those circumstances. So each plays a role, but he sort of went further in his analysis by saying, yeah, some may be more sophisticated than others, but that doesn't make them necessarily more significant or her less culpable than the average participant under the circumstances. So I have 10 seconds. Unless I was not responsive to the court's question, I would stand for other questions. Otherwise, we would ask that the court affirm the lower court's decision. Thank you. Two points, really quick. So here I think what is missing from the district court's analysis is any comparison of Ms. Comey to the other participants who all had more responsibility, more authority, more discretion, more involved in planning and organizing. And I think if you look at what the court said about Mr. Karakuy, it illustrates that the court either applied the wrong standard because it didn't do a comparison or was clearly erroneous because the court lumps in Ms. Comey with Mr. Karakuy as like these middle people who were below the international organizers in Cameroon. I think that's just not a defensible finding when you compare his role to her role. And then just briefly on the preservation point, I think to the extent the court still has a concern, I would ask the court to apply the waiving the waiver doctrine or whatever you call it because, for one thing, had the government briefed this, I would have responded and my reply brief would have been able to determine if I needed to brief this on plain error, quite possibly would have done so out of an abundance of caution. So for that reason, I urge the court to the extent it's not convinced that it's preserved to waive the waiver, I guess. Thank you. I would ask the court to vacate and remand for resentencing. Thank you, counsel. The case is submitted. Thank you for your arguments.